UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| CENTRAL GROCERS, INC., *et al.,* | ) | |
| Debtors. | ) | |
| | ) | 17-13886 |
| | ) | (Jointly Administered) |
| | ) | Judge Pamela Hollis |

| | | |
|---|---|---|
| HOWARD B. SAMUELS, solely as chapter 7 | ) | |
| trustee of the estates of CENTRAL | ) | |
| GROCERS, INC., *et al.* | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. 18-00690 |
| v. | ) | |
| CHIPAIN'S FINER FOODS WEST, INC., | ) | |
| JAMES CHIPAIN, and PETER CHIPAIN, | ) | |
| Defendants. | ) | |

ANSWER TO THE SECOND AMENDED COMPLAINT

Now come Defendants, Chipain's Finer Foods West, Inc., James Chipain and Peter Chipain by their attorney, Dennis M. Sbertoli and as and for their Answer, submit the following.

JURISDICTION AND VENUE

THE COMPLAINT STATES:

1.     This adversary proceeding relates to the above-captioned bankruptcy case (the "Bankruptcy Case"), which was commenced on May 2, 2017 (the "Petition Date") under title 11 of the United States Code (the "Bankruptcy Code").

**ANSWER:** Admitted.

THE COMPLAINT STATES:

2.     This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b), as well as Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (E), (F), (H), and (0).

**ANSWER:** Admitted.

THE COMPLAINT STATES:

3.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**ANSWER:** Admitted.

THE COMPLAINT STATES:

4. Pursuant to Rule 9015-1 of the Local Rules of Bankruptcy Practice and
Procedure for this Court, the Trustee states that he consents to the entry of a final
order or judgment by this Court if it is determined that the Court, absent consent
of the parties, cannot enter a final order or judgment consistent with Article III of
the United States Constitution with respect to any of the requests for relief set
forth in this Complaint.

**ANSWER:** Admitted.

## PARTIES

THE COMPLAINT STATES:

5.      Plaintiff HOWARD B. SAMUELS is the Chapter 7 trustee (the "Trustee")
for the bankruptcy estates of Central Grocers, Inc. ("CGI"), Strack and Van Til
Super Market, Inc. ("Strack"), and SVT, LLC (together with Strack, "SVT").

**ANSWER:** Admitted.

THE COMPLAINT STATES:

6.      Defendant JAMES CHIPAIN ("James") is an individual residing at 11996
Oak Tree Ln., Lemont, IL 60439.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

7.      Defendant PETER CHIPAIN ("Peter") is an individual residing at 13787
Steeples Rd., Lemont, IL 60439.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

8.      Defendant CHIPAIN'S FINER FOODS WEST, INC. D/B/A CHIPAIN'S
FRESH MARKET ("Chipain's," and together with James and Peter, the
"Defendants") is an Illinois corporation with its principal place of business at
1100 State Street, Lemont, IL 60439. Chipain's may be served with process
through its registered agent, Peter Chipain, at 1100 State Street, Lemont, IL
60439. On information and belief, Defendants James and Peter are the owners
and operators of Chipain' s. As of the filing of this amended complaint, Chipain' s
corporate status is forfeited for failure to maintain good standing with the state of
Illinois. On information and belief, at all times relevant to this complaint,
Chipain' s corporate status was forfeited.

**ANSWER:** Denied in so much as, at all times herein relevant, Chipain's was an Illinois

corporation in good standing with the state of Illinois.  It ceased operations in February 2017 as a

direct consequence of the failure of the Debtor CGI to honor its rebate obligation.  James and

Peter were principals in the operation of Chipain's. Chipain's was involuntarily dissolved by the

Illinois Secretary of State on December 14, 2018.

## BACKGROUND
### A. CGI'S COOPERATIVE PROGRAM
THE COMPLAINT STATES:

9.      CGI was a Chicago-based grocery cooperative with hundreds of members
who operated grocery stores located in Illinois, Indiana, Iowa, Michigan, and
Wisconsin. Members joined CGI to participate in its purchasing, dividend, equity,
and lending programs.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

        10.     Members were required to maintain "good standing" status to
participate in CGI's programs. The requirements for good standing, along with the
other rights and duties of membership, were set out in CGI's membership
agreement (the "Membership Agreement"),2 its Amended and Restated By-Laws
(effective November 2012) (the "By-Laws"),3 the Rules and Regulations
(effective March 2013) (the "Rules & Regulations"),4 its Amended and Restated
Articles of Incorporation (as amended 2015) (the "Articles"),s and its Member
Loan Policy and Procedure (effective January 2010) (the "Loan Policy"). Each
member signed the Membership Agreement, thereby agreeing to comply with the
By-Laws, the Rules & Regulations, the Articles, and the Loan Policy.

**ANSWER:** Admitted.

### 1. The Purchasing Program

THE COMPLAINT STATES:

11.     Members in good standing were eligible to participate In CGI's purchasing
program. Members received goods from CGI on account, and CGI received
payment through automated clearing house ("ACH") transactions drawn from the
member's bank account (the "Purchasing Arrangement"). Members were required
to maintain deposit accounts ("Purchase Deposits") with CGI at amounts tied to
their weekly buying volume. *See* Ex. A at 4; Ex. B at 27- 28; Ex. C § 5. If a
member failed to maintain an ACH account or failed to maintain appropriate
Purchase Deposits, that member was deemed to be in violation of By-Laws and
was no longer in good standing. *See* Ex. B at 28-29; Ex. C § 3. A member also
lost its good standing status if payment to CGI was not made within the 12-day
payment term. *See* Ex. B at 28-29; Ex. C §§ 3(d), 6.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

12.     To terminate purchasing from CGI, members were required to adhere to

the procedure outlined in the By-Laws: a member either had to sell or close all its retail locations concurrently with termination or terminate at fiscal year-end and provide 60 days' written notice to CGI (the "Termination Procedure"). *See* Ex. B at 28. If a member failed to comply with the Termination Procedure or violated any other provision of the By-Laws, that member was no longer in good standing, and that member forfeited any amount otherwise owed by CGI to such member. *See id.* at 25,28,29.

**ANSWER:** Admitted.

2. The Patronage Dividend Program

THE COMPLAINT STATES:

13.     Members in good standing were also eligible to participate in CGI's patronage dividend program, which was governed by the By-Laws and the Rules & Regulations. At the close of each fiscal year, CGI's board of directors (the "Board") determined how much of CGI's profit to retain for costs, debt service, and any other reason deemed to be in the best interests of CGI. *See* Ex. B at 25, 27. The remaining profit, if any, was then distributed to members as a patronage dividend. If a member failed to maintain good standing or adhere to any provision of the By-Laws, including the Termination Procedure, it forfeited all rights to patronage dividends. *See* Ex. B at
25, 29.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

14.     Members received their share of a patronage dividend either as a distribution of cash, stock, and credit at the end of the fiscal year, or as quarterly cash payments made in advance of the anticipated year-end dividend, with a final distribution of the balance as cash, stock, and credit at the end of the fiscal year.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

15.     On or about September 15,2016, the Board authorized a $44.5 million patronage dividend, subject to final adjustments, for the fiscal year ending July 30, 2016 (the "2016 Patronage Dividend"). None of CGI' s governing documents, nor any other agreement, required CGI to pay the 2016 Patronage Dividend or any portion thereof. As noted above, the Board had broad discretion under the By-Laws to retain some or all of CGI's profits for costs, debt service, and any other reason deemed to be in CGI's best interests. In fact, when the Board authorized the 2016 Patronage Dividend, CGI was insolvent and had been since at least January 2016.

**ANSWER:** Defendants have no first hand information as to the action of the Board and neither admit nor deny same but demand strict  proof thereof.

4

THE COMPLAINT STATES:

16.    Shortly after authorizing the 2016 Patronage Dividend, the Board learned that CGI had violated the liquidity covenants in its $150 million credit facility. In turn, CGI's lenders demanded-as a condition for not declaring a default on the credit facility-that CGI defer paying 30% of the 2016 Patronage Dividend until CGI achieved compliance with such liquidity covenants the "Deferred Dividend").

**ANSWER:** Defendants have no first hand information as to CGI's violations of its liquidity

requirements and were not privy to actions of CGI's lenders. If anything CGI and its board

concealed that action from defendants.

THE COMPLAINT STATES:

17.    On or about October 13,2016, the Board authorized the Deferred Dividend, thereby amending the 2016 Patronage Dividend so that CGI had no obligation to pay the Deferred Dividend until the company was able to make such payment without violating its liquidity covenants. CGI subsequently sent letters to its members, explaining that the Deferred Dividend had been approved and that 30% of each member's 2016 Patronage Dividend would be recorded solely for bookkeeping purposes in the member's deposit account. CGI's financial condition never recovered such that it could pay the Deferred Dividend and comply with the liquidity covenants.

**ANSWER:** Defendants have no first hand information as to the action of the Board and neither

admit nor deny same but demand strict proof thereof.

3. The Allowance Dividend Program

THE COMPLAINT STATES:

18.    Members also profited from CGI's participation in allowance programs with its vendors. CGI entered into contracts with its vendors whereby it would commit to purchase a certain amount of product and in return the vendor would provide CGI a rebate-called an allowance--on its purchases.

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

19.    On October 27, 2016, while insolvent, CGI paid its members over $2,500,000 in dividends from profit it earned on vendor allowance programs (the "2016 Allowance Dividend"). None of CGI's governing documents, nor any other agreement, required CGI to pay the 2016 Allowance Dividend.

**ANSWER:** Defendants, James and Peter deny the received any dividend from CGI.

5

## B. DEFENDANTS' PARTICIPATION IN CGI'S COOPERATIVE PROGRAM

THE COMPLAINT STATES:

     20.    Defendants executed the Membership Agreements, thereby becoming bound by those agreements, the By-Laws, the Rules & Regulations, the Articles, and the Loan Policy. Defendants never resigned their CGI membership prior to the Petition Date.

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter. The membership

agreement in issue was executed solely by Chipain's in its corporate status.

### 1. Violation of the Termination Procedure

THE COMPLAINT STATES:

     21.    Defendants terminated purchasing from CGI by April 29, 2017, without adhering to the Termination Procedure.

**ANSWER:** Denied. Chipain's was forced to close as a direct consequence of CGI's breach of

the terms of the membership agreement. Neither James nor Peter, individually, were under any

obligation to CGI.

THE COMPLAINT STATES:

     22.    Defendants' failure to terminate purchasing in accordance with the Termination Procedure constitutes a material breach of the Purchasing Arrangement, the Membership Agreement, the By-Laws, and the Rules & Regulations.

**ANSWER:** Denied.

THE COMPLAINT STATES:

     23.    Accordingly, Defendants (a) are no longer in good standing with CGI, (b) lost all rights to Patronage Dividends, and (c) forfeited any other amount owed to them by CGI.

**ANSWER:** Denied. Chipain's was forced to close as a direct consequence of CGI's breach of

the terms of the membership agreement. Neither James nor Peter, individually, were under any

obligation to CGI.

### 2. Receipt of Avoidable Transfers

THE COMPLAINT STATES:

24.     CGI transferred $114,853.50 of the 2016 Patronage Dividend to Defendants (the "Patronage Dividend Transfers") as indicated on the Patronage Dividend Transfer Schedule attached as Exhibit F -1.

**ANSWER:** Chipain's admits it received credit to loan principal, interest and trade receivables

in the amount alleged but James and Peter deny that they received any transfer as alleged above.

THE COMPLAINT STATES:

25.     CGI transferred $15,370.04 of the 2016 Allowance Dividend to Defendants (the "Allowance Dividend Transfer") as indicated on the Allowance Dividend Transfer Schedule attached as Exhibit F -2.

**ANSWER:** Chipain's admits it received the payment alleged and deny that any portion of said

dividend was transfered to James and Peter.

THE COMPLAINT STATES:

26.     On May 31,2018, and again on June 29, 2018, the Trustee sent a demand letter to Defendants (the "Demand Letter"), demanding payment for the Patronage Dividend Transfers." Defendants did not remit payment to the Trustee.

**ANSWER:** Admitted and stating in the affirmative, James and Peter deny that they have any

individual obligation to Debtor.

## C. CGI'S INSOLVENCY

THE COMPLAINT STATES:

27.     CGI was insolvent at the time of the 2016 Patronage Dividend, and at the time of each of the Patronage Dividend Transfers and the Allowance Dividend Transfers described above.

**ANSWER:** These defendants have no personal knowledge of GCI's insolvency.

THE COMPLAINT STATES:

28.     CGI suffered declining financial performance throughout 2015, 2016, and 2017. Although it did not file for bankruptcy until May 2017, CGI was doomed to fail long before then.  A primary driver behind CGI's collapse was the declining condition of SVT - CGI' s retail grocery subsidiary and largest customer.  A decline in SVT's performance affected CGI in several important ways.  It reduced the cash flow from SVT, reducing CGI's ability to pay its debts as they came due. It reduced the value of CGI's Class B stock, thereby reducing the incentive for  grocery retailers to become or remain Members. And it reduced the amount of product that SVT purchased from CGI, thereby reducing the amount of product that CGI purchased from its vendors, which diminished CGI's

7

buying power and made CGI less attractive to grocery retailers.

**ANSWER:** These defendants have no personal knowledge of GCI's insolvency, cash flow

problems and stating in the affirmative, believe that said condition was concealed be Debtor.

THE COMPLAINT STATES:

29.     CGI's declining performance quickly became evident in its
reported financial numbers.  As to its income statement, CGI suffered a net loss
of over $49 million for the fiscal year ending July 30, 2016. As to its balance
sheet, CGI recognized a $28 million impairment charge against goodwill and a
$39 million impairment charge against fixed assets for fiscal year
2016. The causes of the deterioration in CGI's financial condition that led to these
year-end impairment charges were also present in early 2016.

**ANSWER:** These defendants have no personal knowledge of GCI's financial impairment.

THE COMPLAINT STATES:

30.     Even with these impairments to its assets, CGI's balance sheet still
overstated the company's financial condition from a fair market perspective.
Given the likelihood that CGI would soon fail, certain contingent liabilities
should have been recognized on the company's consolidated balance sheet in
2016, including a significant portion of the following liabilities: (a)
approximately $95 million in unfunded pension withdrawal liability; and (b)
approximately $120 million in lease liabilities. In addition to its liabilities being
understated, certain of CGI' s assets were overstated on its balance sheet. CGI's
distribution center, for instance, was carried on its balance sheet at $89 million
throughout 2016 but sold for only $61 million in July 2017.

**ANSWER:** These defendants have no personal knowledge of GCI's misrepresentation of its

financial condition.

THE COMPLAINT STATES:

31.     The marketplace confirmed that CGI' s assets were worth less than
its liabilities long before CGI filed for bankruptcy. From August 2015 to April
2016, with the help of an experienced financial advisor, CGI marketed itself for a
potential sale or merger, but failed to attract a viable offer that would payoff
CGI's debts and return a profit to its shareholders.  The Board should have
pursued any transaction it could have achieved to reduce the ultimate loss to
creditors, but the market itself had demonstrated that CGI's assets were worth less
than its liabilities. When CGI abandoned these sale or merger efforts in April
2016, one Board member candidly expressed concern about CGI's survival,
asking: "Is this Company beyond repair?"

**ANSWER:** These defendants have no personal knowledge of GCI's efforts to market itself or

the internal conditions which lead to any decision to market itself.

8

THE COMPLAINT STATES:

32.    CGI's lenders shared these concerns. During a September 2016 meeting with the company's management, CGI's lenders expressed "great concern as to the direction of the Company." Moreover, as discussed above, shortly after the Board authorized the 2016 Patronage Dividend in September 2016, CGI's lenders forced CGI to defer paying 30% of the dividend because paying the full 2016 Patronage Dividend put CGI in violation of its liquidity covenants.

**ANSWER:**  Defendants have no first hand information as to the occurrences at a meeting among

Debtor's management and accordingly, neither admit nor deny same but demand strict proof

thereof.

## CAUSES OF ACTION

### COUNT ONE
Avoidance of Fraudulent Obligations
Pursuant to 11 U.S.C. § 548(a)(1)(B) - 2016 Patronage Dividend
(Against All Defendants)
THE COMPLAINT STATES;

33.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 32.

**ANSWER:**   Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set

forth in full herein.

THE COMPLAINT STATES:

34.    On or within two years before the Petition Date, CGI authorized the 2016 Patronage Dividend.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

35. The 2016 Patronage Dividend constitutes an obligation incurred by CGI.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

36.  CGI incurred this obligation for the benefit of the Defendants.

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

9

THE COMPLAINT STATES:

37. CGI received less than reasonably equivalent value in exchange for incurring this obligation.

**ANSWER:** Denied.

THE COMPLAINT STATES:

38.    CGI was insolvent at the time of or as a result of incurring this obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI incurred this obligation.

**ANSWER:** Defendants have no first hand knowledge of Debtor's insolvency.

THE COMPLAINT STATES:

39. Accordingly, the Trustee seeks to avoid the 2016 Patronage Dividend obligation pursuant to 11 U.S.C. §548(a)(1)(B).

**ANSWER:** Defendants do not oppose avoidance of the obligation to Chipain's and state in the

affirmative, that said obligation is not due James and Peter.

COUNT TWO
Avoidance of Fraudulent Transfers

Pursuant to 11 U.S.C.. § 548(a)(1)(B) - Patronage Dividend Transfers
(Against All Defendants)

THE COMPLAINT STATES:

40. The Trustee re-alleges the allegations set forth in paragraphs 1 through 32.

**ANSWER:** Defendants re-state and reallege their responses to paragraphs 1 to 32

as though set forth in full herein.

THE COMPLAINT STATES:

41. On or within two years before the Petition Date, CGI transferred the Patronage Dividend Transfers to the Chipain's. Chipain's subsequently transferred the proceeds of the Patonage Dividend Transfers to James and Peter Chipain.

**ANSWER:** Admitted as to Chipain's. At no time did Chipain's transfer any portion of the Patronage Dividend to James and Peter.

10

THE COMPLAINT STATES:

42. The Patronage Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** Admitted as to Chipain's and stating in the affirmative, neither James

nor Peter received any interest in a transfer.

THE COMPLAINT STATES:

43.     The Patronage Dividend Transfers were made to or for the benefit of the Defendants.

**ANSWER:** Admitted as to Chipain's and stating in the affirmative, neither James

nor Peter received any interest in a transfer.

THE COMPLAINT STATES:

44.     CGI received less than reasonably equivalent value in exchange for the Patronage Dividend Transfers.

**ANSWER:** Denied.

THE COMPLAINT STATES:

45.     CGI was insolvent at the time of or as a result of the Patronage Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI made the Patronage Dividend Transfers.

**ANSWER:** Defendants have no first hand knowledge as CGI's insolvency status

or its anticipated transactions.

THE COMPLAINT STATES:

46.     Accordingly, the Trustee seeks to avoid the Patronage Dividend Transfers pursuant to 11 D.S.C. § 548(a)(l)(B).

**ANSWER:** Defendants admit the Trustee seeks to avoid the transfers.

COUNT THREE
Avoidance of Fraudulent Obligations
Pursuant to 11 U.S.C. § 548(a)(1)(B) - Allowance Dividend Transfers
(Against All Defendants)

11

THE COMPLAINT STATES:

47. The Trustee re-alleges the allegations set forth in paragraphs 1 through 32.

**ANSWER:** Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set forth in full herein.

THE COMPLAINT STATES:

48.    CGI had no obligation to make the Allowance Dividend Transfers.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

49. If, however, CGI had an obligation to make the Allowance Dividend Transfers, that obligation was incurred on or within two years before the Petition Date.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

50.    If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI did so for the benefit of the Defendants.

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

51.    If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:**

THE COMPLAINT STATES:

52.    If CGI had an obligation to make the Allowance Dividend Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Allowance Dividend Transfers.

12

**ANSWER:** Defendants have no first hand information as to Debtor's anticipated

future business transactions.

THE COMPLAINT STATES:

53.    Accordingly, to the extent that CGI incurred any
obligation to make the Allowance Dividend Transfers, the Trustee
seeks to avoid that obligation pursuant to 11U.S.C. §548(a)(1)(B).

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

COUNT FOUR
Avoidance of Fraudulent Transfers
Pursuant to 11 U.S.C. § 548(a)(1)(B) - Allowance Dividend Transfers
(Against All Defendants)

THE COMPLAINT STATES:

54.    The Trustee re-alleges the allegations set forth in
paragraphs 1 through 32.

**ANSWER:**  Defendants re-state and reallege their responses to paragraphs 1 to 32

as though set forth in full herein.

THE COMPLAINT STATES:

55.    On or within two years before the Petition Date, CGI
made the Allowance Dividend Transfers to Chipain's.  Chipain's
subsequently transferred the proceeds of the Patronage Dividend
Transfers to James and Peter Chipain.

**ANSWER:** Admitted as to Chipain's.  At no time was any Allowance Dividend
transferred to James and Peter.

THE COMPLAINT STATES:

56. The Allowance Dividend Transfers constitute transfers of
an interest in CGI's property.

**ANSWER:**  Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

57.    The Allowance Dividend Transfers were made to or
for the benefit of the Defendants.

13

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

58.    CGI received less than reasonably equivalent value in exchange for the Allowance Dividend Transfers.

**ANSWER:** Denied.

THE COMPLAINT STATES:

59.    CGI was insolvent at the time of or as a result of the Allowance Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI made the Allowance Dividend Transfers.

**ANSWER:** Defendants have no first hand information as to Debtor's insolvency.

THE COMPLAINT STATES:

60. Accordingly, the Trustee seeks to avoid the Allowance Dividend Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

COUNT FIVE
Avoidance of Fraudulent Obligations
Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 - 2016 Patronage Dividend
(Against All Defendants)

THE COMPLAINT STATES:

61.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 32.

**ANSWER:**  Defendants re-state and reallege their responses to paragraphs 1 to 32 as

though set forth in full herein.

THE COMPLAINT STATES:

62.    On or within four years before the Petition Date, CGI authorized the 2016   Patronage Dividend.

**ANSWER:** Defendants have no first hand information as to when Debtor declared the

Patronage Dividend and accordingly, neither admit nor deny same but demand strict proof

14

thereof.

THE COMPLAINT STATES:

63.     The 2016 Patronage Dividend constitutes an obligation incurred by CGI.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

64.     CGI incurred this obligation for the benefit of the Defendants.

**ANSWER:** Denied as to James and Peter.

THE COMPLAINT STATES:

65.     CGI received less than reasonably equivalent value in exchange for incurring this obligation.

**ANSWER:** Denied.

THE COMPLAINT STATES:

66.     CGI was insolvent at the time of or as a result of incurring this obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the 2016 Patronage Dividend.

**ANSWER:** Defendants have no first hand information as to when Debtor's insolvency and

accordingly, neither admit nor deny same but demand strict proof thereof.


THE COMPLAINT STATES:

67.     Accordingly, the Trustee seeks to avoid the 2016 Patronage Dividend obligation pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:**  Defendants do not oppose avoidance of the obligation to Chipain's and state in

the affirmative, that said obligation is not due James and Peter.

COUNT SIX
Avoidance of Fraudulent Transfers
Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 - Patronage Dividend Transfers
(Against All Defendants)

15

THE COMPLAINT STATES:

> 68.  The Trustee re-alleges the allegations set forth in paragraphs 1
> through 32.

**ANSWER:**  Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set

forth in full herein.


THE COMPLAINT STATES:

> 69.      On or within four years before the Petition Date, CGI transferred
> the Patronage Dividend Transfers to Chipain's.  Chipain's subsequently
> trhansferred the proceeds of the Patronage Dividend Transfer to James and Peter
> Chipain.

**ANSWER:**  Admitted as to Chipain's.  At no time was any portion of a Patronage Dividend
transferred to James and Peter.

THE COMPLAINT STATES:

> 70.      The Patronage Dividend Transfers constitute transfers of an
> interest in CGI's property.

**ANSWER:**  Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

> 71.      The Patronage Dividend Transfers were made to or for the benefit
> of the  Defendants.

**ANSWER:**  Denied.

THE COMPLAINT STATES:

> 72.      CGI received less than reasonably equivalent value in exchange
> for the Patronage Dividend Transfers.

**ANSWER:** Denied.

THE COMPLAINT STATES:

> 73.      CGI was insolvent at the time of or as a result of Patronage
> Dividend Transfers. CGI also was engaged in a business or transaction, or was
> about to engage in a business or transaction, for which CGI had unreasonably
> small capital. CGI, moreover, intended to incur, or believed that it would incur,
> debts that were beyond its ability to pay as such debts matured at the time of the
> Patronage Dividend Transfers.

**ANSWER:** Defendants have no first hand information as to Debtor's ability to pay its debts and

accordingly, neither admit nor deny same but demand strict proof thereof.

THE COMPLAINT STATES:

74.     Accordingly, the Trustee seeks to avoid the Patronage Dividend
Transfers pursuant to 11 U.S.C. § 544(b)(I) and 740 Ill. Comp. Stat. Ann.
160/5(a)(2).

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

COUNT SEVEN
Avoidance of Fraudulent Obligations
Pursuant to 11 U.S.C. § 544(b)(I) and 740 ILCS 160/5 - Allowance Dividend Transfers
(Against All Defendants)

THE COMPLAINT STATES:

75.     The Trustee re-alleges the allegations set forth in paragraphs 1
through 32.

**ANSWER:** Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set

forth in full herein.

THE COMPLAINT STATES:

76.     CGI had no obligation to make the Allowance Dividend Transfers.

**ANSWER:** Denied.

THE COMPLAINT STATES:

77.     If, however, CGI incurred an obligation to make the Allowance
Dividend Transfers, that obligation was incurred within four years before the
Petition Date.

**ANSWER:** Admitted.

THE COMPLAINT STATES:

78.     If CGI incurred an obligation to make the Allowance Dividend
Transfers, CGI did so for the benefit of the Defendants.

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

79.     If CGI incurred an obligation to make the Allowance Dividend
Transfers, CGI received less than reasonably equivalent value in exchange for
doing so.

17

**ANSWER:** Denied.

THE COMPLAINT STATES:

80.    If CGI had an obligation to make the Allowance Dividend Transfers, CGI was  insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Allowance Dividend Transfers.

**ANSWER:** Defendants have no first hand information as to Debtor's financial condition and accordingly, neither admit nor deny same but demand strict proof thereof.

THE COMPLAINT STATES:

81.    Accordingly, to the extent that CGI incurred any obligation to make the Allowance Dividend Transfers, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:**  Defendants do not oppose avoidance of the obligation to Chipain's and state in the affirmative, that said obligation is not due James and Peter.

COUNT EIGHT
Avoidance of Fraudulent Transfers
Pursuant to 11 U.S.C. § 544(b)(I) and 740 ILCS 160/5 - Allowance Dividend Transfers
(Against All Defendants)

THE COMPLAINT STATES:

82.  The Trustee re-alleges the allegations set forth in paragraphs 1 through 32.

**ANSWER:**   Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set

forth in full herein.

THE COMPLAINT STATES:

83.  On or within before the Petition Date, CGI made the Allowance Dividend Transfers to Chipain's.  Chipain's subsequently transferred the proceeds of the Alowance Dividend Transfers to James and Peter Chipain.

**ANSWER:**  Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

18

84.     The Allowance Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

85.     The Allowance Dividend Transfers were made to or for the benefit of the   Defendants.

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

86.     CGI received less than reasonably equivalent value in exchange for the Allowance Dividend Transfers.

**ANSWER:** Denied

THE COMPLAINT STATES:

87.     CGI was insolvent at the time of or as a result of Allowance Dividend Transfers. CGI also  was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Allowance Dividend Transfers.

**ANSWER:** Defendants have no first hand knowledge as to Debtor's insolvency or its

anticipated transactions and accordingly, neither admit nor deny same but demand strict proof

thereof.

THE COMPLAINT STATES:

88.     Accordingly, the Trustee seeks to avoid the Allowance Dividend Transfers pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:** Admitted as to Chipain's and denied as to James and Peter.

COUNT NINE
Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550(a)
(Against All Defendants)

THE COMPLAINT STATES:

89.     The Trustee re-alleges the allegations set forth in paragraphs 1 through 106. (Sic)

**ANSWER:** Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set

forth in full herein.

THE COMPLAINT STATES:

90.    The Patronage Dividend Transfers and the Allowance Dividend
Transfers are subject to avoidance pursuant to 11 U.S.C. §§ 544(b), 547(b), and
548(a)(1)(B).

**ANSWER:**  Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

91.    The Defendants received the Patronage Dividend Transfers and the
Allowance Dividend Transfers as the initial transferees.

**ANSWER:**  Admitted as to Chipain's and denied as to James and Peter.

THE COMPLAINT STATES:

92.    Accordingly, pursuant to 11 U.S.C. § 550(a)(I), the Trustee seeks
to recover the value of the Patronage Dividend Transfer and the Allowance
Dividend Transfers from the  Defendants.

**ANSWER:**  Admitted as to Chipain's and denied as to James and Peter.

COUNT TEN
Unjust Enrichment
(Against All Defendants)

THE COMPLAINT STATES:

93.    Pleading in the alternative to Counts One through Nine, the
Trustee re-alleges the allegations set forth in paragraphs 1 through 32.

**ANSWER:**  Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set

forth in full herein.

THE COMPLAINT STATES:

94.    Defendants received benefits-at CGI's expense-in connection with
the Purchasing Arrangement, the Loan Documents, and certain avoidable
transfers. Specifically, Defendants received benefits associated with the Unpaid
Receivable, the Patronage Dividend Transfers, and the Allowance Dividend
Transfers.

**ANSWER:** Denied.

THE COMPLAINT STATES:

20

95.     Defendants have unjustly retained these benefits to CGI's detriment, even though the Trustee has attempted to recover these benefits through the Demand Letter.

**ANSWER:** Denied.

THE COMPLAINT STATES:

96.     Retention of these benefits by Defendants violates fundamental principles of justice, equity, and good conscience.

**ANSWER:** Denied and stating in the affirmative, neither James nor Peter received any benefit.

THE COMPLAINT STATES:

97.     Accordingly, the Trustee seeks to recover the amount by which Defendants have been unjustly enriched.

**ANSWER:** Defendants admit the relief sought by the trustee but deny he is entitled to that relief.

COUNT ELEVEN
Disallowance of Claims Pursuant to 11 U.S.C. § 502
(Against All Defendants)

THE COMPLAINT STATES:

98.     The Trustee re-alleges the allegations set forth in paragraphs 1 through 115. (Sic)

**ANSWER:** Defendants re-state and reallege their responses to paragraphs 1 to 32 as though set forth in full herein.

THE COMPLAINT STATES:

99.     This count is asserted against Defendants to the extent that any claims have been filed by or scheduled on behalf of Defendants against the CGI Estate.

**ANSWER:** Defendants have filed no claims against the Estate.

THE COMPLAINT STATES:

100. Defendants are persons or entities from which property is recoverable under 11 U.S.C. §§ 542 and 550 (the "Recoverable Property").

**ANSWER:** Denied.

THE COMPLAINT STATES:

101. Defendants have not turned over the Recoverable Property to the CGI Estate.

21

**ANSWER:** Defendants deny they are holding any recoverable property.

THE COMPLAINT STATES:

102. Accordingly, pursuant to 11 U.S.C. § 502(d), the Trustee hereby objects to and seeks disallowance of any claims by Defendants against the CGI Estate. Moreover, pursuant to 11 U.S.C. § 502 (d), the Trustee seeks reconsideration and disallowance of any claims by Defendants against the CGI Estate to the extent that such claims have been allowed by this Court.

**ANSWER:** Defendants have asserted no claims against the Estate.

Wherefore, Defendants Chipian's Finer Foods West, Inc., James Chipain and Peter Chipain respectfully pray that this Court dismiss this cause of action at Plaintiff's costs.

Dennis M. Sbertoli

Dennis M. Sbertoli
ARDC 3128965
PO Box 1482
La Grange Park, IL 60526
(708) 579-9724
dsbert4978@aol.com
ChipainJ\adsSamuels\A2C

22